ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY v. CROWDER.

Opinion delivered April 15, 1907.

1.. CARRIER—SHIPMENT OF LIVESTOCK—NEGLIGENCE.—In an action against
   a railroad company for damages to livestock caused by delay in
   forwarding them, it was admissible to show that the cattle were de-
   tained fifteen hours at an intermediate point where the stock pen
   was in such condition that the cattle could not be fed, as explaining
   their decrease in weight; but the jury. should have been told that,
   unless negligence in forwarding the cattle was shown, no recovery
   could be had, even though there was negligence in permitting the
   stock pen to get in such condition. (Page 567.)

2. INSTRUCTION—RELEVANCY TO ISSUES.—Where plaintiff sought to re-
   cover upon a bill of lading, which he does not allege was procured
   by fraud or unfairness, it was error to submit to the jury the ques-
   tion whether it was fair and reasonable. (Page 568.)

3. TRIAL—IMPROPER ARGUMENT.—It was error to permit plaintiff's counsel to refer to the contract for the shipment of the cattle under which plaintiff was suing as "yellow backed literature," intending thereby to prejudice the jury and divert the attention from the real issue. (Page 568.)

4. EVIDENCE—HEARSAY.—Where a railroad company is sued for negligence in forwarding cattle, and it was proved that the cattle was detained 15 hours at an intermediate station having a defective stock-pen, it was error to permit plaintiff to prove the statements of agents of the company at other stations made to third parties that the company had issued orders to the effect that when its agents were notified a day ahead it would, on account of the bad condition of the stock pen at such intermediate station, arrange to have the cattle forwarded without delay requiring them to be unloaded at such station; there being no evidence that these agents had authority to bind the company by such statements. (Page 568.)

5. CARRIER—SHIPMENT OF LIVESTOCK—NEGLIGENCE.—It is evidence of negligence that a railroad company was notified in advance for an intended shipment of cattle, and yet arranged the schedule of its freight train in such way as to detain the cattle for 15 hours at an intermediate station, where there were no suitable pens for feeding and keeping them. (Page 569.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; reversed.

*L. F. Parker* and *B. R. Davidson,* for appellant.

It is a fundamental law that a party, even though he has signed no contract, who accepts a bill of lading limiting liability, is presumed to know its contents, and to be bound by it. 1 Hutchinson, Carriers, 3 Ed. by Matthews & Dickson, §§ 408-9. If plaintiff had signed the contract without reading it, and had accepted the lower rate, he would have been bound by its terms. 50 Ark. 397; 71 Ark. 185; 113 Fed. 91; *Id.* 92; 3 Am. & Eng. R. Cas. N. S. 290. That a common carrier may limit its common-law liability by special contract is not now open to question. 24 Am. & Eng. R. Cas. N. S. 761. And that it may include in this contract exemption from liability on account of accident and every other cause except its own negligence is also fully established. 1 Hutchinson on Car. (3 Ed.), § 401; 39 Ark. 148; *Id.* 523; 47 Ark. 97; 64 Ark. 115; 3 Wall. 107; 16 Wall. 328; 112 U. S. 337. Such contracts are reasonable and binding, and there is no presumption that they are not based upon a valuable consideration. 50 Ark. 397; 71 Ark. 185; 46 Ark. 236;

67 Ark. 407. Having entered into such a contract, the burden is on .the plaintiff to show that the injury was negligently inflicted. *Ubi supra;* 40 Ark. 375; 44 Ark. 208; 52 Ark. 26; 42 Am. & Eng. R. Cas. N. S. 787.

2. The court erred in admitting secondary evidence of the arrival and departure of trains. 2 Best, Ev. § 472; 1 Elliott, Ev. § 208. Also in admitting testimony that there was unusual shrinkage in weight of the stock, due to bad condition of the pens, whereas there was no allegation in the complaint to that effect. Kirby's Digest, § 6150; 70 Ark. 232; 71 Ark. 197; 67 Ark. 142; 23 Ark. 543. Also in permitting plaintiff to testify from a stock reporter, published in East St. Louis, as to the market at that point, and as to a decline in the market at a time when he was not there.

3. The agreement, as a condition precedent to right of recovery and in consideration of the reduced rate, to give the written notice stipulated in the contract, was reasonable, and should have been complied with. 63 Ark. 331; 67 Ark. 407; 1 Hutchinson on Car., § 442; 4 Elliott on Railroads, § 1412.

4. The evidence is uncontradicted that the delay was caused solely by the bursting of flues in the engine, and that this could not have been anticipated or prevented. The burden was upon plaintiff to show that it was due to appellant's negligence. *Ubi supra;* 55 Fed. 1003.

5. It was error to permit plaintiff's witness, Pearce, to testify to statements made by agents of appellant, who had nothing to do with the shipment. 52 Ark. 78; 71 Ark. 552; 78 Ark. 381. Such testimony was also inadmissible because its effect was to vary by parol a written contract which stipulated that no agent had authority to vary it by parol.

6. The ninth instruction left to the jury to pass upon the reasonableness or unreasonableness of the contract as to any of its provisions, and was therefore erroneous. 52 Ark. 406; 63 Ark. 331; 73 Ark. 205; 5 Ark. 495; 79 Ark. 172.

7. The court had no jurisdiction. But by the terms of the contract plaintiff agreed that in case of delay he would accept the actual amount expended by him for food and water in full compensation for his damages. The proof shows that the amount

expended was less than $100.   45 Ark. 346; 77 Ark. 582; 79 Ark. 248.

8.  The case should be reversed because of improper argument of plaintiff's attorney.   61 Ark. 130; 70 Ark. 179; Id. 305; 71 Ark. 415; 72 Ark. 461; 75 Ark. 577; 77 Ark. 238.

*J. A. Rice,* for appellee.

1.  Errors not assigned in the motion for new trial are waived.   60 Ark. 267.   The motion for new trial must contain the objection to all such evidence as is objected to and exceptions to the rulings thereon.   Kirby's Digest, § 6223.   An assignment that the verdict is contrary to the law is too indifinite.   It should be pointed out in what respect it is contrary to the law.   2 S. W. 198; 68 Ia. 337; 59 Tex. 334.

2.  A satement at the end of a series of instructions that "defendant excepts to each and every one thereof" is in effect but a general exception, the phrase "each and every one" being equivalent to "all."   88 S. W. 966; 97 S. W. 519; 25 S. W. 10; 23 S. W. 735; 23 Minn. 66; 47 N. Y. 576; 14 Pac. 761; 75 Ark. 181.

3.  If the reasonableness of a contract limiting a carrier's liability is in dispute, it is proper to submit that question to the jury.   63 Ark. 333.   Though the construction of a contract is properly for the court, yet, if it is submitted to the jury and they have construed it as the court ought to have done, no prejudice results, and there is no ground for reversal on that account.   81 Ark. 373.

4.  Appellant can avail itself of only such defenses under the contract as it pleaded below.   Defenses not pleaded are waived.   69 Ark. 256; 63 Ark. 336.   See also, 39 Ark. 438.   The stipulation relieving appellant of its common-law liability is without consideration and void.

5.  Appellant fails to point out in what respect the attorney's argument is objectionable.

RIDDICK, J.  This is an appeal by a railway company from a judgment against it for damages alleged to have been caused by its negligence in handling and moving two cars of cattle.

The facts, briefly stated, are as follows: Plaintiff, C. Crowder, shipped sixty-three head of cattle in two of the defendant's cars from Gravette, Arkansas, to St. Louis, Missouri.

Gravette is a station on a branch line of the defendant railway, which line connects with the main line at Rogers, Arkansas. The train from Gravette to which the cars were first attached was a local freight which did not go further than Rogers. The cars containing the cattle left Gravette on the 24th day of July, 1904, and arrived at Rogers, Arkansas, about four or five o'clock in the afternoon of that day. There was no through freight scheduled to pass Rogers after that train arrived until about eight o'clock the next morning, and the cattle for that reason were unloaded and confined in stock pens at Rogers. The train which was scheduled to leave Rogers the next day at eight o'clock A. M. was delayed on account of the breakdown of the engine for several hours, and for this reason did not leave Rodgers until 2.35 P. M. that afternoon. In the meantime, the stock, as before stated, had been unloaded and confined in the stock pens at Rogers, which were in bad condition, had no feeding troughs, and were so muddy that the cattle could not be fed.

The cattle arrived in St Louis correspondingly late. By reason of their long confinement in cars and muddy stock pens the cattle decreased in weight and declined in value to a considerable extent:

Crowder brought an action against the company to recover damages suffered by the delay. He alleged that he had shipped the cattle under a written contract, which he attached to his complaint; that the delay in forwarding the cattle was without reasonable excuse and due to the negligence of the defendant, and he asked judgment for $721.69.

The answer of the defendant denies that it was guilty of any negligence in the shipment of the cattle, and denied that plaintiff complied with the stipulation in the bill of lading, which made it a condition precedent to recovery for any loss or damage to the live stock covered by the contract that plaintiff should within one day after the delivery of the stock, and before the stock was removed from the point of destination or mingled with other stock, give notice in writing of the claim for damages to some general officer or to the nearest station agent of the company or to the agent at destination or some general officer of the delivering line.

On the question of whether the notice referred to in the answer was given, the evidence at the trial was very unsatisfactory. It rested on circumstances and not on direct evidence, but a majority of the court are of the opinion that it was sufficient to support the finding of the jury on that point, and that the question was properly submitted to them.

The complaint, as before stated, based the right of plaintiff to recover damages on the allegation that the defendant had been guilty of negligence in detaining the cattle while *en route* and in not forwarding them with reasonable diligence. There was no allegation of negligence on 'the part of the company in failing to keep its stock pen at Rogers in good condition. The court, over the objection of the defendant, permitted the plaintiff to show that the stock pen at Rogers was in such a condition that the cattle could not be fed during their confinement there, and that this was one reason why they decreased so much in weight. We think that this evidence was competent as tending to explain the great loss in weight of the cattle claimed by plaintiff. But, in order that the jury might not be misled by such evidence, they should have been told that the basis of the action was the negligence of the company in failing to exercise due care to forward the cars containing the cattle, and that, unless negligence in that respect was shown, no recovery could be had, even though the jury might believe that the company was guilty of negligence in allowing its stock pens where the cattle were confined to get in such a condition that the stock could not be fed. It may be that the company was responsible for damages caused on that account, even though it was guilty of no negligence in moving the cattle, but the complaint did not allege negligence in that respect, and no recovery can be had on that ground.

In the 21st instruction asked by defendant the court was requested to instruct the jury as follows: "The evidence as to the conditions of the cattle pen is only introduced to show how the shrinkage may have been incurred or caused in part,' and is not the basis of the action; and if you find from the evidence that the defendant used ordinary care to move this stock over its line, it would not be guilty of negligence, and plaintiff cannot recover on that account." This instruction was proper, and,

in view of the evidence in regard to the condition of the stock pen and its effect on the cattle, should have been given.

The stock, as alleged in the complaint, was shipped under a written contract, a copy of which was attached to the complaint. There is nothing whatever in the evidence to show that this contract was not fairly made, and no reason is shown why it is not binding on the parties, but the court refused to instruct the jury, as asked by defendant in its first instruction, that if the jury found that the defendant company had two rates for the' shipment of livestock, and that the plaintiff shipped at the lower rate, he was bound by the stipulations in his contract, but in the ninth instruction given at the request of the plaintiff submitted to the jury the question as to whether the contract was fairly made and its terms just and reasonable. The contract is the basis of plaintiff's action. He does not allege that it was procured by fraud or unfairness, nor ask that it be set aside, and we are of the opinion that the court erred in allowing the jury to decide whether it was fairly made and reasonable in its terms.

The argument of counsel in which he referred to the contract under which the cattle were shipped as "yellow-backed literature" was, in our opinion, improper. As there was no issue in respect to the validity of the contract, the only effect of such an argument would be to prejudice the jury, and divert their attention from the real issue in the case. On objection being made, the court should have stopped the argument.

The court permitted the plaintiff to prove the statements of agents of the defendant at other stations made to third parties that the company had issued orders to the effect that when its agents on the Gravette branch lines were notified as much as a day ahead of a shipment of cattle it would, on account of the bad condition of the stock pen at Rogers, arrange to have the stock shipped through without any delay requiring them to be unloaded at Rogers. These statements were not made to the plaintiff or to his agents, and were not intended to affect his conduct in the shipment of the cattle. It is not shown that these agents whose statements were proved had any authority to bind the company by such statements, and we are of the opinion that this evidence was hearsay and incompetent.

But it was competent for plaintiff to show that he notified the agent of the defendant in advance of his intended shipment of cattle. The fact that the defendant, although it was frequently receiving consignments of cattle on the branch line from Gravette to St. Louis, Missouri, and although it was notified of this particular shipment in advance, arranged the schedule of its through freight train in such a way as to detain the cattle at Rogers for at least fifteen hours, thus compelling the plaintiff to unload his cattle at Rogers, where there were no suitable pens for feeding and keeping them—these facts, in our opinion, tend to show negligence on the part of the company, and that this negligence caused injury to the cattle of plaintiff. But this evidence was to be considered in connection with the other circumstances, and whether there was negligence was a question for the jury which should have been submitted on proper instructions.

For the errors indicated, the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.